# Smith *versus* The Columbia Insurance Company.

1. A fire insurance on specific property to secure a particular interest, covers a loss happening by a destruction of such property only as was held in that particular right, and to the extent only of the injury to that interest.

2. Hence where the interest to be secured by the policy was described as a mortgage including land, it is a material fact that the land was subject to *prior* mortgages held by the assured at the date of the policy, and which if concealed vitiates the policy.

3. A. insured certain real and personal property for $4000, to secure a mortgage which was said to cover land ; and in the answers to the interrogatories he apportioned the sum insured among the different species of property. He then held three mortgages on the land, the last of which was for $4000, and one on the personalty. The property mentioned in the policy was destroyed to an amount greater than the sum insured, but the land remaining was proved to be of greater value than $4000. The insurers offered to pay the loss on receiving an assignment of all his mortgages of which they had no notice until after the loss. *Held,*

1st. He could recover only for the value of the property included in the mortgage for $4000.

2d. That the existence of the prior encumbrances on the mortgaged property was a material fact which should have been communicated to the insurers without inquiry by them.

Certificate from the Nisi Prius.

The plaintiff declared in covenant on a policy of insurance against fire, averring that at the time of effecting the insurance, and at the time of the loss " he was interested in the said insured frame buildings, machinery and tools of the satinett factory, known as Watson's factory, and owned by Samuel Watson."

Y

[Smith *v.* Insurance Co.]

At the trial he gave in evidence the order for insurance. "Make insurance against loss or damage by fire for four thousand dollars, on the under mentioned property, for the term of one year, on the *frame buildings and lot, machinery and tools* of the satinett factory, known as Watson's factory, situate, &c. ; owned by Samuel Watson, and now insured by the undersigned *to cover a mortgage* on said property, held by me on the same *for said amount*, according to survey on file in this office, *lot included.*"

The premium paid, was two and a half per cent.

The survey contained an estimate of the value of the property described in the application :

1. Factory building and fixtures, &c., with various items of machinery, in all     -     -     -     - $4180
2. Dye-house $700 ; *machinery stored in this building intended to be sold*, $1250,     -     -     - 1950
Dry-house,     -     -     -     -     -     -     - 100

———

6230

He further gave in evidence the answers to the printed queries, thirty-five in number, all of which are fully answered. In these it was stated, "S. J. Watson, of, &c., is the owner, and James Smith (the plaintiff) is mortgagee and holds possession under the mortgage." The 34th interrogatory was as follows:—

"State the amount of insurance wanted; on building and fixtures in each building; on machinery do.; on stock and merchandise do."

*Ans.*—On factory and fixtures,     -     -     -     - $1500
On machinery, including the machinery in the dye-house,     -     -     -     -     -     -     - 2000
On dye-house,     -     -     -     -     -     - 500

———

$4000

There was no inquiry made respecting mortgages or other encumbrances.

The plaintiff then read in evidence the policy sealed by the defendants ; the risk being thus described, after reciting the payment of the premium.

"Upon the frame buildings, machinery and tools of the satinett factory, known as Watson's factory, and owned by Samuel Watson, situate at Leicester, Worcester county, Massachusetts, according to survey on file in this office. This policy is intended *to secure a mortgage* held on the above named property *by the assured.*"

It then proceeded in the usual form to covenant, to make good to the assured all damage that might happen by fire "to the property above mentioned," not exceeding $4000, or to replace the goods, or to pay the amount awarded by arbitrators.

[Smith *v.* Insurance Co.]

The  plaintiff  then  read  in  evidence  to  the  jury,  as  part  of  his preliminary  proof,  the  following  paper,  endorsed  "*list  of  prior mortgages.*"

Leicester,  Feb. 26, 1848.    I  hereby  certify  that  at  the  time  of the  destruction  of  my  factory  by  fire,  in  this  place,  on  the  11th inst.,  there  were  the  following  mortgages  upon  the  real estate  and machinery,  viz. :—

One to Lucretia Denny 2d, dated January 30, 1816, for  $1000.00
Interest on the same, from April 6, 1840,          -     -    471.00
One  to  Thomas  Denny,  dated  May  18,  1826,  upon
     which was a balance, July 1, 1844, of     -     -      435.00
Interest on the same from July 1, 1844,   -     -     -      93.24
One  to  James  Smith,  dated  October  22,  1836,  upon
     which was a balance, April 22, 1844, of    -     -    3000.00
Interest on the same, from April 22, 1844,      -     -     684.50
                                                       _____
                                                        $5684.74
One  to  Thomas  Lord  &  Co.,  and  now  owned  by  James
     Smith, dated July 1, 1835, upon which was a balance,
     January 1, 1847, of     -     -     -     -     -     -   4000.00
Interest on the same,   -     -     -     -     -     -

The  plaintiff  then  read  a  resolution  of  the  board  of  directors  of the  defendants:

"That  the  company  is  willing  to  pay  whatever  it  is  liable  for, conditioned  that  Mr.  Smith  will  transfer  his  interest  in  the  property  saved  from  fire  and  the  other  mortgages  (of  which  the  company  had  received  no  notice,  but  said  by  Mr.  Smith  to  be  on  the same  property),  to  this  company."

The  plaintiff  then  examined  the  former  secretary  of  the  defendants,  to  prove  the  above  papers,  &c.    He  stated,  on  cross-examination,  "there  was  nothing  said  about  prior  mortgages.    No inquiry  was  made.    If  I  had  known  of  their  existence  I  would not  have  taken  the  risk  at  all."

The  plaintiff  then  read  certain  evidence  taken  under  a  commission  to  Massachusetts,  with  exhibits  attached  thereto.

These  proved  the  destruction  and  value  of  the  property  beyond the  amount  insured.

The  estimates  of  the  property  destroyed,  among  which  were  all the  items  mentioned  in  the  answer  to  the  34th  interrogatory  apportioning  the  sum  insured,  varied  from          $5750 to $5925
Other property saved and not insured,             1490 to  1690
Land on which the factory stood,                           5000

By  this  commission  the  various  mortgages  already  mentioned  in the  preliminary  proof  were  also  proved.

That  for  $3000  it  appeared  had  been  originally  given  to  secure a  note  of  $10,000  drawn  by  Watson  and  endorsed  by  the  plain-

[Smith *v.* Insurance Co.]

tiff, and by payments the amount was reduced as stated in the preliminary proof, and it, with the note secured, had been assigned to the plaintiff.

But it also appeared from the document itself that this mortgage covered only *the machinery and tools* in Watson's factory, and did not bind the real estate, whereas *all the other mortgages were exclusively upon the realty.*

The mortgage to Lord & Co. was also originally given to secure a note of $6000, which, by payments, was reduced to $4000, as above stated. It was on the realty only. Attached to this mortgage was a certificate, and the fact was proved by a witness, that possession had been taken of the real estate under this mortgage by the plaintiff. But it also appeared that the factory was in the actual occupancy of a tenant, or by Watson, at and for some years prior to the fire. All of these mortgages were assigned to the plaintiff, and held by him at the time of effecting the insurance.

The defendants then moved for a nonsuit on the ground of misrepresentation apparent from the evidence of the situation of the property and the rights of the plaintiff, and the representations contained in the policy, order for insurance, and answer to the queries. Also, on the ground of variance between the titles proved in evidence and the particular title named in the order for the insurance and the answers to the queries, the plaintiff's counsel having been repeatedly called on to designate which of the several mortgages given in evidence he relied on, which the counsel declined doing, and insisted on his right to proceed and claim under all of the said mortgages; but the court overruled the motion.

The defendants then called their former secretary, who executed the policy. He said, " Smith called on me at the office at the date of the order. He applied in the usual way for insurance, without giving the particulars as to mortgages. This description (order) said nothing about prior mortgages. I would certainly not have taken the risk if I had known there were prior encumbrances; perhaps I might at an unreasonable rate; but I would not have done so at five per cent. Premium varies as to houses. We generally reject frame houses in the neighbourhood of the city. There is no customary price for them.

I did not ask plaintiff if he had any other mortgages. The president really took the risk in connexion with myself. I do not remember hearing any inquiry on the subject of mortgages. I was within hearing when the president asked questions. If he named any such thing as prior encumbrances we would not have touched it; that is my opinion. Our objection, knowing prior encumbrances, is from the interest to cause a loss."

The counsel for the defendants then requested the court to instruct the jury on the following points:—

[Smith *v.* Insurance Co.]

1. That there was a material misrepresentation and concealment which avoided the policy, because the underwriters had the right to the legal inference, that the value of the real estate would be applied towards the payment of the mortgage in aid of the insurance, or that they paying the insurance might look to the land for reimbursement; i. e. would be subrogated to the right of the party indemnified by them.

3. That the plaintiff could only recover for the injury sustained on the property included in some one of the mortgages, and covered by the risk, as distributed by himself; and as it appeared that one-half the risk was included in one mortgage and one-half in another mortgage, the plaintiff could not recover more than one-half the amount of the policy.

His honor instructed the jury that the facts of the plaintiff's interest consisting of several mortgages instead of one, and of his concealing the prior mortgages, were immaterial. The only object in showing the mortgages was to prove an insurable interest. It was the business of the insurers to inquire if they deemed the extent of his interest material, and then a false answer would have been fatal. Nor was it any answer that the plaintiff had not assigned his interest to the defendants, even if entitled to subrogation.

"Nor do I see the force of the allegation of the defendant that the plaintiff is confined to the property covered by his title, or to the amount insured on each item, according to his distribution of the risk. All the difficulty on that head is removed by the proof that all the property, of whatsoever kind insured, was destroyed by the fire, or was of a value much greater than the sum insured. On the whole case, the Court instructs you that the plaintiff is entitled to a verdict.

"Whether the plaintiff intended to cover all the mortgages, or the last mortgage, would seem to be immaterial, as there is no doubt that on that mortgage more than $4000 was due the plaintiff."

*D. W. C. Morris* and *McMurtrie* for the appellants.—That the plaintiffs had an insurable interest was never denied, but that when the interest is defined in respect to which indemnity is sought, the holder can claim for a loss as to another interest. It would, in fact, be claiming for a loss of goods.not described in the policy. For the reference to the mortgage as the interest to be secured is in effect an incorporation of the description of the mortgaged property, into the policy, as a description of the property insured. The truth is, the judge supposed all the mortgages were upon the same property, but the facts are otherwise. No rule is better settled than that the thing destroyed must have been described in the policy, or it is not covered. And the party is confined to the very thing described. The same rule extends to descriptions of particular

[Smith *v.* Insurance Co.]

interests—e. g. owner, mortgagee, execution or judgment creditor, depositary, pledgee, agent, &c. To say that one having insured his interest as agent may recover for a loss as owner, is to make a new contract. This follows from the nature of the contract, which is indemnity from loss by reason of the destruction of a thing—not an insurance of the thing, for that is impossible: 2 *Atk.* 556, 7; 1 *Irish C. C.* 51. Hence where a particular right is insured, that must be shown to have existed or to have been at least possible, if the thing insured had escaped the peril, as in the case of profits: 6 *East* 31, 622; so of an insurance by one as "assignee in bankruptcy," where a plea that the interest of the bankrupt before assignment had been indemnified for the same loss, was held a bar: 4 *Excheq.* 615; or by one as mortgagee where the extent of the damages is the extent to which the mortgaged property fails to pay the debt: 16 *Pet.* 495. For in that case, what other risk is run by a mortgagee? If the property were destroyed by other causes than those insured against, the mortgagee is a creditor of the mortgagor, having lost his specific security. Paying his debt, the indemnifier has a right to a cession of the debt and securities, otherwise two interests are covered for one premium. The person primarily liable is the debtor, and the right of the insurer paying the insured to proceed against such an one has been fully recognised: 16 *Pet.* 501; Mason *v.* Sainsbury, 3 *Doug.*; 2 *Barn. & Cress.* 254; 4 *Taunt.* 127; 1 *Vez.* 98; 1 *Pet.* 193, 215; 1 *Eden* 130.

It is no answer to say that the plaintiff might have insured generally: 16 *Pet.* 505; *Marshall B. iv. c.* 2; 2 *Pet.* 29; 1 *Ad. & Ell.* 621; 3 *Mason* 395, render that more than doubtful. But he chose to insure specially; and for an obvious reason—to diminish the premium by lessening the apparent risk. The evidence shows but one mortgage was insured, and that was for $4000, covered the lot, and under it there had been an entry made. The same evidence shows that one species of the property on which the risk was apportioned was not held under that mortgage. The effect of apportionment is equivalent to separate policies on the different parcels: 10 *John.* 235; 1 *Irish C. C. Ca.* 51.

There was a material concealment or misrepresentation. The motive is wholly immaterial: *Ell. Ins.* 31; 1 *Bla.* 594; 2 *Pet.* 49. There was a warranty that a lot of land included in the mortgage stood between the insurers and total loss if a fire occurred. This chance of relief was like the probability of salvage under marine policies, and in the event proved to be sufficient to pay this one mortgage, but the plaintiff destroys the right by claiming the whole of what remains under earlier encumbrances held at the date of the policy. In the valuation there was, therefore, an over-estimate to the exact amount of the concealed encumbrances, which is fatal: 6 *Humph.* 179; or a misrepresentation, in saying the lot was included when its value belonged to another;

[Smith *v.* Insurance Co.]

or a concealment of that material fact, materially increasing the ultimate hazard and the premium, as was proved at the trial. The interest of the assured to prevent a loss was also diminished. For by a fire a worthless security was converted into a good debt due by a stranger. The case of a mortgagor is directly opposite; he remains liable for the debt at all events, and hence the extent of the encumbrances no more diminishes his interest to preserve the property than his general indebtedness: 2 *Pet.* 49; 6 *Humph.* 179; 10 *Pet.* 515–16; 2 *Caines* 40.

*Todd,* contrà.—It was not the mortgage but the property which was insured, and such is the plain effect of the covenant, which is to pay a certain sum if certain property is injured by fire to that extent. As the contract would have been a wagering contract if there was no interest proved, the mortgages were read simply to prove an interest, beyond the amount insured, in the property destroyed. There is no dispute but that the property described was destroyed, nor that the loss exceeded the amount insured, nor that, as mortgagee, the plaintiff has lost so much of his security. There was no reason for mentioning the lot, nor had it any effect, nor do we claim anything on account of that. The argument comes to this absurdity, that the plaintiff having an interest as mortgagee for $4000 on land alone worth $5000, insures the whole when nothing was in peril. The amount mentioned was so much of our mortgage debt that was in peril, and that peril arose from the liability of the property described in the policy to be burned. The construction of the contract by the court below was, therefore, the correct one.

As to the concealment; it is enough that we informed them that, as mortgagee, we considered so much of our debt was in peril, and knowing land was part of our security, it was for them to inquire if that was encumbered: 1 *Phil. Ins.* 232–41. That we answered every question they asked truly, is conceded, and ·that no inquiry was made respecting encumbrances—a most obvious one, if deemed material. That we need not have disclosed our particular interest unless inquiry was made, is settled: *Ham. Ins.* 22; 9 *Ser. & R.* 103; 10 *Pick.* 40; 1 *Phil. Ins.* 168–9, 285–8; 1 *W. C. C. R.* 409; 9 *Barr* 199. The cases cited on the other side were those of positive misrepresentation of value or interest. The doctrine as to salvage and abandonment does not apply to fire policies. Nor is there any case in which it has been held that a mortgagee must assign on being paid his debt, unless there is a stipulation to that effect, as in policies of the Franklin office in this city. So common a case from the known practice of owners of land assigning their policies to mortgagees, must have furnished a precedent had there been such a view ever taken of the law as has been contended for.

[Smith *v.* Insurance Co.]

GIBSON, J.—The interest of a mortgagee is a special but an insurable one, and it may at his option be insured generally or specially: generally, when he says nothing about his mortgage, and insures as the entire owner; and specially, when the nature of his interest is specified in a memorandum. By the first he pays a premium proportional to the risk of the absolute ownership; by the second, a premium proportional to the risk of a less and derivative ownership. In the one case and in the other the subject of the insurance is apparently the *corpus* of the thing insured, but actually the interest of the party assured in it. If the absolute owner be insured he recovers the full value of the thing lost, because his interest in it is commensurate with its value: if the owner of a limited interest in it is insured, he recovers only to the extent of his interest. Each may insure separately and recover separately *pro interesse suo.* A policy of insurance has been from the beginning a rude and indigested instrument, whose legal effect, moulded by usage and judicial decision, is different from a strict interpretation of it. As the words of an execution are frequently controlled with us by an endorsement, so are the words of a policy frequently controlled by a memorandum. Notwithstanding the form of the contract, therefore, a mortgagee insures, whether generally or specially, not the ultimate safety of the whole of the property, but only so much of it as may be enough to satisfy his mortgage. It is not the specific property that is insured, but its capacity to pay the mortgage debt. In effect, the security is insured.

The fallacy of the argument on the part of the plaintiff below is in assuming that the words in the policy, "to pay, make *good,* and satisfy all such damages or loss which shall or may happen by fire to the *property,*" bind the insurer to pay in every case to the extent of an outside price, for which it might be sold, unencumbered, in the market. What is the property insured? Not the thing independent of ownership; for if the law were otherwise, a policy might be, to some extent, a wagering one. The beneficial interest in it is insured, and only to the value of it can the owner recover for a loss of it, because the contract of insurance is strictly a contract of indemnity. No one would pretend that the mortgagee of a house, who had insured it, could recover for the burning of a few shingles in the roof of it, though the unimpaired value of the building might be much greater than the amount of the mortgage. Were the law otherwise, the mortgagee might recover from the insurer the value of the property lost, and the whole of his mortgage debt from the mortgagor of the property saved. In reference to the clear value of the property insured, therefore, the existence of encumbrances is always material to the risk. Were it not, the holder of a mortgage for hundreds might insure and recover for thousands, on a gambling policy. And why

[Smith *v.* Insurance Co.]

is the question of unencumbered value material to the risk? Because the insurer, having paid the mortgage debt, is entitled to have recourse to the mortgaged property; and any concealment of facts which would lessen its value, would be an injury to him. That he is entitled to a cession of the security is proved by analogies from marine insurance, from fire insurance in respect of recourse to the hundred, and from the contract of suretyship. Salvage is a substantial element in calculating the chances of safety or loss, and to suppress any fact that might decrease the value of it would affect the rate of the premium. The plaintiff is willing to assign the mortgage protected by the policy, but refuses those which were prior to it, on the ground that they were outside the contract. Good faith required him to bring them into, if not the contract, the view of those who were parties to it. If the unencumbered value of the property saved would satisfy the mortgage, he would be safe, and the defendant would lose nothing; and, therefore, to hold back information that might affect its value or amount, would hold out to the insurer a false appearance of security. Had the plaintiff said nothing about a mortgage, prior or subsequent, he would have insured as the entire owner, and paid an outside premium: by insuring a limited interest, without disclosing facts which might affect its apparent solidity, he induced the company to take a risk on terms which would have otherwise been declined. It is not sufficient for the insured to answer all the questions propounded to him. Like a witness on the stand, he is bound to tell the whole truth without waiting to be interrogated. The contract of insurance is eminently a contract of good faith. When the insurer relies on the representations of the insured, as he almost always does, he is entitled to the benefit of every material fact within the exclusive knowledge of the applicant; not, indeed, to his surmises, opinions, or fears, but to the specific facts if material, on which they are founded, in order that he may judge for himself; and this, too, whether the insured believe those facts to be material or not, or whether they are undisclosed by accident or design. In this case it is impossible not to see that the existence of prior mortgages was material. It is said there was enough in the nature of the transaction to lead to an inquiry about prior encumbrances, inasmuch as the mortgage to be protected was not only of buildings, but of ground which could not be consumed. But the ground might be insufficient to secure the mortgage, and that might well suggest the necessity of further security. There was nothing in the transaction to suggest the existence of circumstances which did not meet the eye.

Nor can there be room for a doubt that the security protected was the mortgage in question. The plaintiff himself admits the fact by offering to assign it, and by denying the right of the defendant to have the benefit of the prior mortgages of the realty. He

is entitled to retain the mortgage of personalty, because it involves other property, and has nothing to do with the transaction; but if the two prior mortgages of the realty were intended to be protected, the plaintiff would be entitled to a cession of them; and in either aspect their existence ought to have been disclosed.

Judgment reversed and *venire de novo* awarded.